**McGUYRE v. DUNCAN, Gdn., et al.**

No. 13980—Opinion Filed Sept. 16, 1924.

**1. Liens—Laborers' Liens—Priority—Statutes.**

Under sections 7468, 7469, 7470, 7471 and 7472, Comp. Stat. 1921 (Chap. 114. Sess. Laws 1911), a laborer is given a lien upon the product of his labor, superior to either prior or subsequent mortgage liens. for the amount of such labor claim, subject only to the conditions prescribed in said sections.

**2. Same — Mechanics' Liens — Attorneys' Fees—Priority.**

In the enforcement of laborers' mechanics' and materialmen's liens, reasonable attorney fees are allowable by the court as costs, under section 7482, Comp. Stat. 1921, to the lien claimant recovering judgment establishing his lien; but where there is a question of priority of liens as between prior mortgages and subsequent mechanics' and materialman's liens the attorney fees al-

lowed under said section should not be made a preferred claim over such prior mortgage liens; but such fees should be given the same rank and preference as the judgment recovered by the lien claimant.

### 3. Same—Disposition of Cause.

Record examined; and held, that the judgment of the trial court, allowing the defendant D. M. McBeth a prior lien for the amount of his labor bill, upon the product of his labor, should be upheld and affirmed; and held, that the judgment of the trial court giving the subsequent lienors and defendants in the action a preference over prior mortgages to the extent of their attorney fees should be modified by reducing such attorney fees to the same rank and preference as the judgment obtained by the lien claimants.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Osage County; Charles B. Wilson, Jr., Judge.

Action by H. R. Duncan, guardian of Paul Albert, against Signe Brandborg and Karl Brandborg, for money judgment and for foreclosure of real estate mortgage. Subsequently R. L. McGuyre, Dickason-Goodman Lumber Company, a corporation, D. A. Andrews, D. M. McBeth, and P. T. Walton Lumber Company, a corporation, were made additional parties defendant. The judgment of the court was for D. M. McBeth for the amount of his labor claim, which was made a first lien; and for plaintiff for the amount claimed, and for foreclosure of real estate mortgage; and for R. L. McGuyre for the amount of his claim and for foreclosure of real estate mortgage, both plaintiff's and McGuyre's judgments being made subject to the claim of D. M. McBeth for labor, and subject to attorney fees charged as costs in favor of D. M. McBeth, P. T. Walton Lumber Company, and Signe and Karl Brandborg. There was a complete determination of the case by the judgment. No question is raised about other portions of the judgment.

Defendant R. L. McGuyre prosecutes appeal from all that part of the judgment wherein D. M. McBeth was given a prior lien for labor and attorney fees, and wherein other attorney fees were allowed as costs and ordered to be paid out of the proceeds of the sale of the property before payment of the prior mortgage debts owing to plaintiff and to McGuyre. Judgment modified and affirmed.

Hargis & Bingham and W. D. Pierson, for plaintiff in error.

Gray & Palmer, for defendant in error D. M. McBeth.

Widdows & McCoy, for defendants in error Signe and Karl Brandborg.

Opinion by SHACKELFORD, C. H. R. Duncan, guardian of Paul Albert, commenced this action in the district court of Osage county against Signe and Karl Brandborg, for money judgment and for foreclosure of a real estate mortgage. The suit was based upon a promissory note, dated June 23, 1920, signed by defendants, in the sum of $3,000, with interest at seven per cent. per annum, and providing for attorney fees in the sum of $300, and upon real estate mortgage given to secure said note, covering the property described as lots 5, 6, 7, and 8, in block 8, in Palmer Highland addition to Pawhuska.

Breach of the conditions of the note and mortgage was alleged, and judgment in the sum of $3,000, with interest at seven per cent. per annum from and after the 23rd of June, 1920, and for attorney fees in the sum of $300, and for foreclosure of the mortgage according to its terms, is prayed for. Subsequent to the filing of the original petition, the plaintiff filed a supplemental petition making R. L. McGuyre, Dickason-Goodman Lumber Company, a corporation, D. A. Andrews, D. M. McBeth, and P. T. Walton Lumber Company, a corporation, additional parties defendant because they had, or were claiming, liens on the same property. The defendant R. L. McGuyre answered setting up a mortgage lien on the same property given to secure a promissory note in the sum of $3,800, dated June 24, 1920, bearing interest at ten per cent. per annum, all signed by the defendants Signe and Karl Brandborg and given for part purchase money of the property, and that suit had been filed upon said instruments and the debt merged into judgment, and for foreclosure of the lien. The defendant D. M. McBeth filed answer and cross-petition claiming a laborer's and materialmen's lien upon the property in the sum of $625.33, for which he prayed judgment, together with an attorney's fee of $200. D. A. Andrews, P. T. Walton Lumber Company and Dickason-Goodman Lumber Company all filed answers and cross-petitions upon materialmen's liens, Andrews claiming $200 attorney fees, and Dickason-Goodman Lumber Company claiming $113.93 attorney fees. The defendants Signe and Karl Brandborg answered, and afterwards filed a supplemental answer in which they sought to recover $250 attorney fees. Other pleadings were filed, putting the cause at issue upon the petition and various cross-petitions.

The cause was called for trial on the 22nd

of March, 1922, and submitted to the court without a jury. On the 15th of April, 1922, the court rendered a final and complete judgment in the case, determining the rights and priorities of the parties. It will only be necessary to set out the portions of the judgment complained of in the appeal. The court ordered a sale of the property and distribution of the proceeds as follows: First, to the payment of all costs of the action and sale of the property, including the following attorney fees: D. M. McBeth, $75; D. A. Andrews, $75; Signe and Karl Brandborg, $75; P. T. Walton Lumber Company, $50. Second, to D. M. McBeth for labor done and paid for by him upon the property, amounting to $417.37. Third, to plaintiff, $3,000 with interest at seven per cent. per annum from June 23, 1920, and attorney fees in the sum of $300, a total of $3,669.78. Fourth, to R. L. McGuyre, $3,800, with interest at eight per cent. per annum from June 24, 1920, and attorney fees in the sum of $480. Fifth, the residue to D. M. McBeth, Dickason-Goodman Lumber Company, D. A. Andrews and P. T. Walton Lumber Company.

The defendant R. L. McGuyre, the third lienor according to the judgment, prosecutes appeal from that part of the judgment which gives the defendant D. M. McBeth a prior lien for the sum of $417.37 for labor done upon the property and paid for by him; and from that part which fixed certain attorney fees as part of the costs payable out of the proceeds of the sale before payment to any of the lienholders. The argument which plaintiff in error makes in his brief presents two questions, which he proposes as follows:

"Proposition 1. Did the trial court err in finding as a matter of law that the defendant D. M. McBeth had a mechanics' and laborers' lien for $417.35, which lien is superior to that of the mortgage lien of this plaintiff in error R. L. McGuyre.

"Proposition 2. Did the trial court err in allowing and taxing attorney's fees as costs in this action, and making the same a preferred lien against the property mentioned and described in plaintiff's petition?"

1. The lien claim of D. M. McBeth seems to have been based upon work and labor done and paid for by him, and for material furnished by him. The court, in effect, found that $417.37 of the amount claimed was for labor performed and paid by McBeth. There is no complaint made as to the amount. The complaint made by the plaintiff in error is that the court erred in allowing D. M. McBeth a prior or superior lien to his mortgage lien, for the

amount of the labor bill. The statutes controlling in the matter are sections 7468 and 7472, Comp. Stat. 1921.

"7468. Lien Created. Laborers who perform work and labor for any person under a verbal or written contract, if unpaid for the same, shall have a lien on the production of their labor, for such work and labor: provided, that such lien shall attach only while the title to the property remains in the original owner."

"7472. Priority of Lien. Liens created under this act shall take precedence over all other liens whether created prior or subsequent to the laborer's lien herein created and provided."

Section 7471 provides that proceedings to enforce the lien for labor shall be commenced within eight months after the labor is performed. There is no complaint made here that the proceeding was not commenced within eight months after the work was done. The plaintiff in error complains that D. M. McBeth filed his lien claim under sections 7461 and 7462, and is therefore not entitled to claim priority of lien for the labor under the sections quoted. We think that where the lien claimant brings his proceeding within the time limit fixed in section 7471, for enforcing his laborer's lien, the mere fact of having filed his lien under sections 7461 and 7462 was not such an abandonment of his prior lien claim as would preclude him from asserting his right to a prior lien for labor done as provided in sections 7468 and 7472. The filing of his lien claim certainly would not place him in a worse position than if he had filed no lien claim for the labor done. If no lien claim had been filed for the work and labor done, still under section 7468 and succeeding sections, he would have a priority over a mortgagee on the product of his labor, whether the mortgage was prior or subsequent to the attaching of his laborer's lien, conditioned that he bring his proceeding to enforce the lien within eight months after the work was completed.

In Basham et al. v. Goodholm & Sparrow Inv. Co., 52 Okla. 536, 152 Pac. 416, the question of the laborer's preference over a prior mortgage was before this court. In that case the court held:

"Chapter 114, Sess. Laws 1911, gives laborers, who perform work in the construction of a building or improvements upon premises, a lien upon such building or improvement so constructed by them, which lien takes precedence over a prior recorded mortgage upon said premises."

Chapter 114, Sess. Laws 1911, has been brought forward in Comp. Stat. 1921 as sec-

tions 7468, 7469, 7470, 7471, and 7472. In the body of the opinion the court said:

"Section 1 (7468, Comp. Stat. 1921) is comprehensive, and gives laborers a lien on 'the production of their labors'; and this lien is not limited to personal property, but was evidently intended to cover all kinds of property. At least we are unable to infer that it was intended to limit the lien to personal property only. Section 5 (7472, Comp. Stat. 1921) expressly states that these liens are to take precedence over all other liens, whether prior or subsequent. This statute is evidently remedial, and intended to reach just such instances as we find in the case at bar."

In that case the judgment of the trial court was modified so as to give the lien claim for labor precedence over the prior mortgage.

The plaintiff in error cites Fleharty & Co. v. National Loan & Investment Co. et al., 89 Okla. 292, 215 Pac. 744, as an authority supporting his contention. It seems that the question here presented was not raised in that case. It is true that the bill relied upon by plaintiff in error in that case was in part for labor done; but no separate finding seems to have been made by the trial court as to the amount claimed for the labor; while in the case under consideration the court made what in effect was a separate finding as to the amount of McBeth's claim for labor. It is not disputed that the finding of the trial court was correct as to the amount, nor is it disputed that the product of the labor of McBeth, the buildings constructed upon the property, was of value sufficient to take care of McBeth's claim for the work and labor done by him upon such buildings. In the assignments of error the question is raised that McBeth did not do all of the labor earning the amount of $417.37, but did only part of it and had the remaining part done by others, for which he paid, and hence the lien claimant is not entitled to that amount for labor performed. This assignment of error is not argued in plaintiff in error's brief, and will be held to be waived under the repeated holdings of this court.

We think that the holding of this court in Basham et al. v. Goodholm & Sparrow Inv. Co., supra, is controlling upon the question of priority between the labor claim of McBeth, and the claim under the mortgage, made by the plaintiff in error. Under the authority of the case cited, the trial court did not err in holding that the labor claim of McBeth would take precedence over the prior mortgage of the plaintiff in error.

2. The second question propounded is whether or not the attorney fees should be a preferred claim and paid out of the proceeds of the sale before such proceeds should be distributed among the claimants according to the priorities fixed by the trial court. The court taxed certain attorney fees as costs, and provided that the payment of them and other costs in the case should be made before otherwise distributing the proceeds of the sale. Section 7482, Comp. Stat. 1921, provides as follows:

"In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action."

The following section provides that where the lien claimant does not institute action upon his lien claim, the owner of the land may institute an action to have the lien claim determined, and if the lien claimant does not establish his claim, all or part of the costs may be taxed against the lien claimant, as may seem to be just. And it is provided in section 7484:

"Proceeds Insufficient. If the proceeds of the sale be insufficient to pay all the claimants, then the court shall order them to be paid in proportion to the amount due each."

In prosecuting this appeal the plaintiff in error is indirectly presenting the proposition that the forced sale of the property will probably not produce sufficient money to pay off the first mortgage, interest, and attorney fees and pay him in full. If that condition should develop, then should the plaintiff in error be required to lose the amount of the attorney fees made a preferred claim, in addition to such other loss as he may sustain? If this be done, some authority for it must be found in the statutes covering the matter of attorney fees. So far as we can see, there is no statutory provision covering the matter other than section 7482, supra, which provides that the attorney fee shall be taxed as costs. In passing this section could it have been the intention of the Legislature to make the attorney fee of a subsequent lienor a preferred claim over a prior lienholder? It does not appear to be obvious that such was the intention. Unless expressly provided by statute, lien claims should take precedence according to their dates. We have just found that the labor lien of D. M. McBeth should take preference over the prior mortgages because the lawmaking power expressly and unmistakably so provided. But, does the provision that attorney fees should be taxed as costs mean that they are to be a preferred claim over prior mortgages? The

plaintiff in this case has a claim of approximately $3,500, and plaintiff in error has a second mortgage lien amounting to approximately $4,800. These mortgages were of record before any claim of the other lienors ever attached to the property. The claim of McBeth for labor takes precedence. and must be paid first, and the three claims amount to approximately $8,225. Suppose that under the forced sale the property should bring $7,500. Out of the amount the McBeth claim for labor must be paid, and the plaintiff's mortgage debt must be paid, and there is left substantially $3,580 for plaintiff in error, but this amount should be subject to the payment of the attorney fees fixed by the court, first, and whatever is left shall be paid over to plaintiff in error, if the judgment of the trial court is to stand as rendered. Can it be insisted that the Legislature intended any such thing by providing that the attorney fees should be taxed as costs? Can it be insisted that such construction should be placed upon section 7482? We are inclined to think not. The plaintiff in error has a claim for $3,800, for what was equivalent to that much money loaned upon the property, and the mortgage was placed of record before the materialmen's liens attached. We see no good reason why he should be made to pay the attorney fees for such subsequent lienors, which he is in effect required to do under the judgment; and not only this, but must also pay the attorney fee for the original defendants as well. We thing this part of the judgment was erroneous. We think that no greater preference should be given the attorney fees than the judgments the lienors recovered in enforcing their liens. The court gave D. M. McBeth a preference upon his claim for labor over the prior mortgages, and fixed an attorney fee at $75.00. This particular attorney fee should take the same preference as the judgment recovered on the claim. To this extent the judgment complained of should be permitted to stand. The plaintiff was given a judgment for his mortgage debt, and it was made a first lien upon the property, save and except as to the judgment of McBeth for labor. This judgment should be given a preference in the distribution of the proceeds over everybody, after McBeth had been paid off, until his judgment is satisfied. Plaintiff in error was given a judgment for his mortgage debt, and his judgment was placed third in rank, and it should be given preference over all the parties except McBeth and the plaintiff. The attorney fees allowed the other parties should take the same rank and preference as the judgments secured by the claimants. The order to pay other costs

of the case besides attorney fees should stand. That is manifestly just. But, we can see no justice in leaving the judgment in a condition where the whole burden of paying and losing the attorney fees will likely fall upon the party complaining here, even to the extent of paying the attorney fee for the original defendants, the Brandborgs. Allowance of an attorney fee to the Brandborgs in such a way that it may, and perhaps will, fall upon the plaintiff in error to pay, cannot be justified under any consideration. It may be that their efforts in the defense defeated some lien claimants, and a fee was allowable on that theory. If so, then the fee for the defendants, the Brandborgs, should have been fixed as a judgment against such defeated lien claimant and not have been given preference out of the proceeds of the sale of the property, and make the burden of paying it fall upon some successful lien claimant.

The judgment of the trial court should be modified as above indicated, and as so modified we recommend that the judgment be affirmed. The costs of the appeal should be charged, one-half to plaintiff in error, and the other half against the lien claimants and the defendants, the Brandborgs. in whose favor the attorney fees were allowed as preferred claims, except D. M. McBeth, to be divided among them in proportion to the amount of the attorney fees fixed by the trial court.

By the Court: It is so ordered.