**SHEFTS SUPPLY, Inc., v. BRADY et al.**

No. 24050. Feb. 19, 1935.

C. H. Baskin, for plaintiff in error.

Anglin & Stevenson, for defendants in error.

PER CURIAM. This is an appeal from a judgment of the district court of Hughes county in favor of the defendant in error A. A. Brady, plaintiff in the trial court, and against the plaintiff in error, Shefts Supply, Inc., defendant and cross-petitioner in the trial court. The parties will be hereinafter referred to as plaintiff and cross-petitioner, respectively.

Plaintiff in his petition and amended petition in substance states: That the General Gas Corporation was the owner of a certain gas line including a right of way over certain lands described therein, and that in March, 1930, the plaintiff entered into an oral contract with the said General Gas Corporation to furnish labor, teams, and plows to be used in the burying of the pipe line; that the labor, teams, and plows were furnished for 25 days at the rate of $20 per day, the full amount being $500, and that plaintiff had received in payment the sum of $10, leaving a balance of $490; that plaintiff has prepared and filed his lien statement against said property and that he was entitled to judgment for said amount, together with attorneys' fees in the sum of $100; and judgment foreclosing his lien on the pipe line, right of way and other equipment belonging to the General Gas Corporation.

The defendant, Shefts Supply, Inc., filed its answer and cross-petition admitting that the General Gas Corporation was the owner of the pipe line and right of way described in plaintiff's petition, but denying all other allegations thereof. The cross-petitioner further contended that plaintiff was not entitled to a lien and that cross-petitioner was the owner of a prior mortgage upon the gas pipe line, right of way, and equipment, securing the payment of $17,476, and cross-petitioner prayed that its mortgage be foreclosed and decreed a prior lien to the lien of the plaintiff. A jury was waived by all parties and the cause was tried to the court on February 11, 1932.

The evidence was undisputed that the

mortgage of the cross-petitioner was filed for record prior to the date of the oral contract between the plaintiff and the defendant General Gas Corporation; and also that the plaintiff furnished three men and two teams with plows to do the work and that his own work on the job was mainly supervising. Judgment was rendered in favor of the plaintiff and against the defendant General Gas Corporation, and the defendant and cross-petitioner, Shefts Supply, Inc., decreeing the lien of the plaintiff to be a laborer's lien, and that therefore the same was prior and superior to the mortgage of the cross-petitioner, Shefts Supply, Inc., and further decreeing that the cross-petitioner, Shefts Supply, Inc., had a valid mortgage lien and was entitled to foreclosure thereof, subject, however, to the prior lien of the plaintiff.

Cross-petitioner assigns as error the action of the trial court in adjudging the plaintiff, A. A. Brady, to have a laborer's lien upon the property of the General Gas Corporation, and also in holding such lien to be prior to the mortgage lien of the cross-petitioner, Shefts Supply, Inc.

The trial court evidently rendered its judgment upon the theory that the lien rights of the plaintiff were governed by the provisions of section 11007, O. S. 1931, being section 7468, C. O. S. 1921, to wit:

"Laborers who perform work and labor for any person under a verbal or written contract, if unpaid for the same, shall have a lien on the production of their labor, for such work and labor; provided, that such lien shall attach only while the title to the property remains in the original owner."

Section 11011, O. S. 1931, being section 7472, C. O. S. 1921, is as follows:

"Liens created under this act take precedence over all other liens, whether created prior or subsequent to the laborer's lien herein created and provided."

Counsel agree that the first question necessary for decision is whether or not the plaintiff, A. A. Brady, was entitled to a laborer's lien under the provisions of the above-quoted statutes. It apparently is conceded by the plaintiff, Brady, that unless his rights are governed by the provisions of said statutes, the prior recorded mortgage of the cross-petitioner will be prior and superior to his lien claim.

In Continental Supply Co. v. Greenan Co., 140 Okla. 221, 282 P. 598, the Greenan Company was attempting to foreclose its lien for labor furnished in completing a pipe line owned by the Moore Refining Company and for work done in painting a part of the said pipe line. It appears that it was the original intention of the plaintiff to claim under section 7464, C. O. S. 1921, which section in substance provides for a lien upon oil and gas leases or pipe lines for work performed, or material furnished in digging, drilling, operating, or repairing oil and gas well, or constructing any machinery, fixtures, or appurtenances used in connection with an oil and gas lease, but at the trial the plaintiff announced that it was claiming under section 7461, C. O. S. 1921, as amended by the Session Laws of 1923, c. 54, and this court held that it was entitled to a lien under said last-mentioned section.

In the case of McEwen Mfg. Co. v. Anadarko Producers Oil & Gas Co., 115 Okla. 127, 241 P. 493, it was held that section 7464, C. O. S. 1921, does not govern a lien for labor or materials furnished to a pipe line company, and that said section has reference only to an oil and gas lease. Said case was followed with approval in Continental Supply Co. v. Greenan, supra, wherein this court held that section 7461, C. O. S. 1921, as amended, was the applicable statute.

From an examination of previous decisions of this court, we find that the cases wherein sections 7468 and 7472, C. O. S. 1921, are held to be applicable are cases wherein the lien claimant has performed manual labor with his own hands in the construction of an improvement upon real estate, and, in such case, it has been held that such a laborer has a lien on the improvements so constructed by him, which lien is superior to a prior mortgage against the real estate itself. Basham v. Goodholm, & Sparrow Inv. Co., 52 Okla. 536, 152 P. 416; McGuyre v. Duncan, 100 Okla. 217, 229 P. 199. The lien granted to the laborer under section 7468, C. O. S. 1921 (section 11007, O. S. 1931), is enforceable only against the improvements which represent the production of the claimant's labor, while liens under section 7461, supra, are enforceable against both the real estate and the improvements thereon and against the subsequent owners thereof, but do not take priority over a mortgage which was of record prior to the date when the first labor or materials were furnished.

In Morley v. McCaskey, 134 Okla. 50, 270 P. 1107, the plaintiff McCaskey entered into a written contract to do the plumbing work and furnish material and fixtures for the construction of a dwelling house, and the

question arose as to the rights of certain lien claimants who had contributed their labor to the project. The court said:

"Are such parties, 'laborers' within the meaning of sections 7468 and 7472, inclusive, or are they contractors or subcontractors, as provided for by sections 7461, 7462, and 7463, C. O. S. 1921? If they fall within the provisions of the latter sections the trial court erred in separating their claims and giving them priority for the labor performed.

"An 'independent contractor' has been defined as one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work. Producers' Lumber Co. v. Butler et al., 87 Okla. 172, 209 P. 738; Midland Oil & Gas Co. et al. v. Creel et al., 89 Okla. 23, 213 P. 852; Tankersley v. Webster, 116 Okla. 208, 243 P. 745; Wagoner v. A. A. Davis Construction Co. et al., 112 Okla. 231, 240 P. 618; Southern Construction Co. et al., v. State Industrial Commission et al., 112 Okla. 248, 240 P. 613.

"The Supreme Court of the United States, in Vane v. Newcombe, 132 U. S. 220, 10 S. Ct. 60, 33 L. Ed. 310, in distinguishing a contractor from an employee, used this language:

"'It seems clear to us that Vane was a contractor with the company, and not an employee within the meaning of the statute. We think the distinction pointed out by the circuit court is a sound one, namely, that to be an employee within the meaning of the statute, Vane "must have been a servant, bound in some degree at least to the duties of a servant, and not," as he was, "a mere contractor, bound only to produce or cause to be produced a certain result—a result of labor, to be sure—but free to dispose of his own time and personal efforts according to his pleasure, without responsibility to the other party."'"

In Farmer v. St. Croix Power Co., 117 Wis. 76, 93 N. W. 830, the court held:

"A laborer is one who furnishes his personal service, of a grade commonly performed by persons working by the day, while a subcontractor is one who agrees to do a particular act covered by a superior contract."

In Morley v. McCaskey, supra, the court further said:

"A laborer ordinarily is a person without particular training and who is employed at manual labor under a contract terminable at will. We are of the opinion that the words 'laborers who perform work and labor,' used in section 7468, supra, are intended to designate ordinary laborers who perform actual physical toil; common laborers and those who are required to use their hands or muscles in actual work. Such words do not apply to those who furnish both labor and material under a contract to perform a designated portion of an entire contract. The purpose of the statute is to protect a class of persons rarely able to protect themselves, and who, from the laborious nature of their occupations and the necessity of earning their daily bread by daily toil, have not time, opportunity, or training sufficient to inform themselves as to the financial responsibility of the parties for whom they work. It is such persons who work under a contract terminable at will who are in danger of being discharged without receiving their compensation, and who need this unusual and strong means of enforcing their rights by an ordinary action or by attachment proceedings. It does not seem probable that the Legislature should provide such extraordinary power for collection of compensation for his services to a contractor who was adequately protected under sections 7461 and 7463, supra.

"We conclude that the cross-petitioners, who furnished both labor and materials under contracts for the completion of certain portions of said building, were not laborers within the provisions of section 7468, supra, and that the trial court erred in separating their claims and establishing the priority of a portion thereof as labor liens."

The definition of "laborers" hereinbefore set forth has been to some extent enlarged by the later opinion of this court in Home Building & Loan Association v. White, 141 Okla. 240, 284 P. 889, wherein it was held that the labor contemplated in said section includes personal services of a skilful nature, but such enlarged definition does not change the rule in so far as it applies to the facts in this case.

In the case at bar, the plaintiff contracted to, and did, furnish labor, teams, and machinery, consisting of plows, to perform the job of burying the pipe line. In our opinion it does not make any difference whether he was furnishing such labor, teams, and equipment for a lump sum contract price of $500, or for 25 days at the rate of $20 per day, since in either event the greatest part of the contract price was not in payment for his own personal physical labor such as was contemplated to be covered by section 7468, C. O. S. 1921, being section 11007, O. S. 1931.

We, therefore, hold that under the facts in this case the lien claim of the plaintiff, Brady, is governed by the provisions of

section 7461, C. O. S. 1921, as amended, being section 10975, O. S. 1931.

The only remaining question is as to the priority between the lien of the plaintiff, Brady, and the mortgage lien of the cross-petitioner. In Morley v. McCaskey, supra, this court quoted with approval the fourth paragraph of the syllabus in the case of Basham et al. v. Goodholm & Sparrow Inv. Co., 52 Okla. 536, 152 P. 416, as follows:

"Under the laws of this state a mortgage duly executed and recorded takes precedence over a materialman's lien accruing after the recording of such mortgage, even to the extent of attaching to improvements placed upon the mortgaged premises afterwards by the materialman."

And in the body of the opinion of the Basham Case, the court quoted with approval from 20 Am. & Eng. Ency. page 479 as follows:

"It is well established as a general rule that, as against other incumbrances, such as mortgages, deeds of trust, judgments, executions, etc., a mechanic's lien takes precedence according to the time when it attached to the property, being preferred to all other incumbrances which have attached subsequent to that time, but postponed to incumbrances previously existing."

For the reasons hereinbefore stated, the judgment of the trial court is reversed and the case is remanded, with directions to render judgment establishing the priority of said liens as follows:

(1) Mortgage lien of the cross-petitioner, Shefts Supply, Inc.

(2) Mechanic's lien of the plaintiff, A. A. Brady.

Other lien claimants took part in the original trial of this case, but it will be unnecessary to mention their claims, since they are not parties to this appeal.

Attorneys' fees to be given the same rank and preference as the judgments recovered by the lien claimants.

The Supreme Court acknowledges the aid of Attorneys Kenneth R. Lott, C. J. Davenport, and J. E. Thrift in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Lott and approved by Mr. Davenport and Mr. Thrift, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur.